# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

MOHAMED TANGARA, and THOMAS L. BRENNAN, on behalf of themselves and all others similarly situated,

        Plaintiff,

v.

GENERAL MOTORS LLC,

        Defendant.

Case No.

**CLASS ACTION COMPLAINT**

1. Breach of Written Warranty Under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;
2. Violations of New York General Business Law §§ 349, 350;
3. Violations of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq.*;
4. Fraud;
5. Unjust Enrichment.

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Mohamed Tangara and Thomas L. Brennan (collectively, "Plaintiffs"), bring this action against Defendant General Motors LLC, ("Defendant" or "GM"), by and through their attorneys, individually and on behalf of all others similarly situated, and alleges as follows:

## INTRODUCTION

1. This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former GM vehicle owners and lessees whose vehicles suffer from a defective air conditioning system ( "AC systems") resulting from systemic failure of the refrigerant hose that transmits refrigerant from the vehicles' compressor to the condenser in the following models: 2015

Cadillac Escalade models, 2014-15 Chevrolet Silverado 1500 models, 2015

Chevrolet Suburban models, 2015 Chevrolet Tahoe models, 2014-15 GMC Sierra

1500 models, and 2015 GMC Yukon models ("Class Vehicles").[1]

2.     This action arises from GM's fraudulent and misleading marketing,

sale and warranting of Class Vehicles.  GM marketed and sold the Vehicles as

including a functioning AC system suited for its intended purposes, despite

knowing prior to sale—and failing to disclose to Plaintiffs and Class members—

that the AC system is defective and virtually guaranteed to fail because of GM's

failure to adequately secure the refrigerant hose.  As a result of the tremendous

pressure to which the refrigerant hose is subjected while the AC system is in

operation, as well to extreme vibration experienced during vehicle operation

generally, the refrigerant hose will eventually shake loose, crack, leak and fail

("the Defect").

3.     Further, if the Defect, which is latent but present in all Class Vehicles

at the time of sale and all times thereafter, manifests while the AC system is in use,

the AC system will suddenly cease to operate, causing the compressor to seize and

necessitating additional costly repairs.

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

4.     GM refused to disclose the Defect's existence to prospective customers and actively concealed the Defect from Plaintiffs and Class members at the time of sale. GM has known of the Defect since at least October 2014, when it issued a Technical Service Bulletin ("TSB") advising its authorized dealers and service technicians of the Defect and a simple prophylactic solution: using a bracket to better secure the refrigerant hose to minimize vibration and the likelihood of failure.[2]  But GM nevertheless chose to conceal from Class members that the components within the AC system are defective and would require costly repairs, and that the Defect would reduce the intrinsic and resale value of Class Vehicles.

5.     GM has been plagued with customer complaints concerning premature failure of the AC system as a direct result of the Defect, yet has done nothing to protect the significant investment loyal Class members have made in Class Vehicles.  Indeed, although a later TSB instructed authorized service technicians to inspect the refrigerant hose when performing vehicle maintenance, technicians were authorized to secure the hose *only* if the Defect had manifested, thereby ensuring that tens of thousands of Class Vehicles would manifest the

---

[2] *See* https://www.repairprocedures.com/service-bulletin/document/2015/cadillac/escalade-esv-2wd/preliminary-information/pit5331/100302829_7527571_2_82_0_3996395.html (last visited August 18, 2017).

defect, and that owners of Class Vehicles would incur millions of dollars in repair costs. *See* TSB PIE0340, attached as **Exhibit A**.

6.      Moreover, when customers whose Vehicles have manifested the Defect bring in their Vehicles to GM's authorized technicians for repairs—whether in- or out-of-warranty—GM's  authorized dealers routinely inform them that the parts required to repair the Vehicles are on backorder and unavailable.  Class members thus are deprived for weeks or even months of a functioning AC system, even during the hot Summer months, or are forced to obtain aftermarket parts from a third party at their own expense, which, according to authorized GM dealers, will prohibit such customers from participating in a recall campaign should GM ever decide to initiate one.

7.      The Defect poses a significant safety risk to the operator and passengers of Class Vehicles.  When the Defect manifests—often suddenly and without warning—the air conditioning shuts off completely.  The Defect can manifest at any time of the year. For many Class members, the Defect manifests in the middle of Summer, when temperatures are at their highest. In some areas of the country, these high temperatures can be dangerous to both the vehicle operator and their passengers. The Defect thus presents a serious safety concern because when it manifests, it subjects Class members and their guests to dangerously high temperatures without relief.

4

8.      The Defect also may result in engine stalling, further endangering Vehicle occupants and operators.  The AC compressor is directly powered by the engine's accessory drive belt.  If the compressor seizes while the AC system is in operation, it may place excessive strain on the drive belt, and thereby the Vehicles' drivetrain, which can result in sudden and unanticipated stalling during operation, greatly increasing the likelihood of accident and injury.

9.      In short, as a result of GM's unfair, deceptive, and/or fraudulent business practices, current and former owners and/or lessees of Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money, property, and/or loss in value, as well as a significant risk to their safety.  The unfair and deceptive trade practices committed by GM were conducted in a manner giving rise to substantial aggravating circumstances.

10.     Had Plaintiffs and other Class members known about the Defect at the time of purchase or lease, they would not have bought or leased Class Vehicles, or would have paid substantially less for them. Plaintiffs and many Class members also would have avoided the significant out-of-pocket costs they incurred to repair their vehicles following manifestation of the Defect, or the lost use and enjoyment of their Vehicles while awaiting the repair parts needed to correct the Defect and repair failed AC systems.

11.     Accordingly, Plaintiffs bring this action to redress GM's violations of New York's consumer fraud statute, violations of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq.*, and violations of the Magnuson-Moss Warranty Act, as well as fraud and unjust enrichment.

## JURISDICTION & VENUE

12.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over Defendant because it has conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of Michigan and throughout the United States.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, there are one or more authorized GM dealers within this district and

Defendant has advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district, including to Plaintiffs and other members of the Class; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## PARTIES

### Plaintiff Mohamed Tangara

15.     Plaintiff Mohamed Tangara ("Plaintiff Tangara") is a citizen of the State of New York, and currently resides in New York City, New York.

16.     On or about July 7, 2015, Plaintiff Tangara purchased a new 2015 Chevrolet Tahoe from Major World Chevrolet, an authorized GM dealer in New York City, New York, for personal and business uses.

17.     Prior to purchasing his vehicle, Plaintiff Tangara test drove the vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with GM sales representatives concerning the vehicle's features. Neither the test drive, the advertisements, the window sticker nor the sales representatives disclosed or revealed that the AC system was defective and prone to premature failure.

18.     With only 26,000 miles on the odometer, Plaintiff Tangara had the AC system on his vehicle fail without warning.

19.     Plaintiff Tangara then brought his vehicle to an authorized GM dealership, where the authorized dealership diagnosed the problem as a leaking condenser and his vehicle was given a new condenser. At this time, Plaintiff Tangara's vehicle was under warranty, and therefore Plaintiff Tangara did not pay out of pocket for the repair.

20.     At 45,000 miles, however, the condenser in Plaintiff Tangara's vehicle broke again, causing the AC system to immediately fail.

21.     Plaintiff Tangara brought his vehicle back to the authorized dealership, where he was told that it was no longer under warranty—and therefore he would have to pay for the repairs himself, and that GM did not have the replacement condenser available.

22.     Plaintiff Tangara was then told that Defendant would contact him once a replacement condenser was available.

23.     After 4 months without air conditioning, Plaintiff Tangara had not heard anything from Defendant, and searched for a replacement condenser online.

24.     Plaintiff Tangara was able to find a replacement condenser online, but was told by the authorized dealership that, because the replacement part did not come from GM, they were unable to install it in Plaintiff Tangara's vehicle.

25.     Plaintiff Tangara ultimately took his vehicle to a third party, who replaced the condenser in Plaintiff Tangara's vehicle.

26.     Plaintiff Tangara ultimately paid $950 to repair the Defect.

27.     As of August 22, 2017—more than four months after Plaintiff contacted GM to find the necessary replacement condenser—Plaintiff Tangara has still not heard back from Defendant regarding the Defect.

28.     Neither Defendant nor its agents, dealers, or other representatives informed Plaintiff Tangara of the Defect's existence at any time either prior to or following his purchase.

29.     Plaintiff Tangara has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket cost to pay for repair of the Defect and the diminished value of his vehicle. Had Defendant disclosed the Defect to Plaintiff Tangara, he would not have bought his vehicle or would have paid less for it.

**Plaintiff Thomas Brennan**

30.     Plaintiff Thomas Brennan ("Plaintiff Brennan") is a citizen of the State of Washington, and currently resides in Bellevue, Washington.

31.     In December 2014, Plaintiff Brennan purchased a new 2015 Chevrolet Tahoe from Michael's Chevrolet (now known as "Evergreen Chevrolet"), an authorized GM dealer in Issaquah, Washington, for personal uses.

32.     In April 2017, at 40,000 miles, Plaintiff Brennan's vehicle's AC system failed without warning.

33.     Plaintiff Brennan then brought his vehicle to an authorized GM dealer, who told him that his vehicle's "condenser has a hole in it."

34.     The authorized dealer then told Plaintiff Brennan that it would cost $2000 to fix the Defect because his vehicle was out-of-warranty. Plaintiff Brennan's warranty ran out at 36,000 miles.

35.     Plaintiff Brennan then researched the issue and discovered that numerous other GM customers were having similar problems with their AC systems.

36.     In May 2017, Plaintiff Brennan contacted GM and complained about the issue with his vehicle.

37.     GM contacted Plaintiff Brennan and told him that it would replace the defective condenser in his vehicle for $200, which Plaintiff Brennan agreed to.

38.     Plaintiff Brennan ultimately paid $200 to repair the Defect.

39.     Plaintiff Brennan then waited two months—from May 2017 to July 2017—for GM to produce the replacement part, when the defective condenser was ultimately replaced by an authorized dealer.

40.     Neither Defendant nor its agents, dealers, or other representatives informed Plaintiff Brennan of the Defect's existence at any time either prior to or following his purchase.

41.     Plaintiff Brennan has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket cost to pay for repair of the Defect and the diminished value of his vehicle. Had Defendant disclosed the Defect to Plaintiff Brennan, he would not have bought his vehicle or would have paid less for it.

## The Defendant

42.     Defendant General Motors, LLC is a limited liability company organized under Delaware law with its principal office located at 300 Renaissance Center, Detroit, Michigan 48265.

43.     Defendant is an automobile design, manufacturing, distribution, and service corporation doing business within the United States.  Furthermore, Defendant, through its various entities, designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles throughout all fifty States under several prominent brand names, including but not limited to Chevrolet, Buick, GMC, GM, and Pontiac (which include Class Vehicles).

11

44.    GM sells vehicles through a network of authorized dealerships that are the agents of GM, and under extensive control of GM.

## TOLLING OF STATUTES OF LIMITATIONS

45.    Any applicable statute(s) of limitations have been tolled by GM's knowing and active concealment and denial of the facts alleged herein.  Plaintiff and the members of the Class could not have reasonably discovered the true, latent nature of the Defect until shortly before this class action litigation was commenced.

46.    GM was and remains under a continuing duty to disclose to Plaintiffs and the members of the Class the true character, quality and nature of the Class Vehicles, that the Defect results from a poor design and/or failures in the manufacturing process, will require costly repairs, poses safety concerns, and diminishes the resale value of the Class Vehicles, in addition to causing Class members to pay out of pocket costs to repair their Vehicles.  As a result of GM's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

A.    **The Defect within Class Vehicles.**

47.    GM is a multinational corporation with hundreds of thousands of employees worldwide.

48.     Since 2013, GM has manufactured, distributed, marketed, sold and warranted various models of trucks and SUVs built on a single vehicle platform, referred to internally as GMT K2XX vehicles.  GMT K2XX vehicles include the following make and model vehicles, referred to hereafter as "Class Vehicles": 2015 Cadillac Escalade models, 2014-15 Chevrolet Silverado 1500 models, 2015 Chevrolet Suburban models, 2015 Chevrolet Tahoe models, 2014-15 GMC Sierra 1500 models, and 2015 GMC Yukon models.

49.     Long before GM began designing and manufacturing Class Vehicles, all passenger vehicles sold in the United States—including GM trucks—have come equipped with air conditioning systems as a standard item in order to cool cars (and their occupants) in hot weather. *See* Window Sticker for 2014 GMC Sierra, attached as **Exhibit B**.

50.     The AC systems designed and manufactured by GM all have a hose that connects the compressor to the condenser in the vehicle, and transfers coolant, which helps provide cool air throughout the vehicle.

51.     The connecting hose—the "refrigerant hose"—is the high pressure side hose and experiences approximately 350 psi of pressure when the air conditioning is running, in addition to excessive vibration and jostling during normal vehicle operation.  If the hose cracks, it could leak coolant – necessary for the continued working of the AC system.

52.    If the hose is not properly restrained, one of the crimped metal fittings on the hose end may eventually crack and leak due to the constant flexing of the hose in that location.

53.    Additionally, if the hose cracks, it could spray oil and refrigerant onto the air conditioning compressor, making the source of the leak difficult to identify.

54.    In order to repair this damage and the air conditioning function, customers must replace the refrigerant hose and then install a line bracket to properly restrain the hose:



55.    After completing these repairs, customers must then recharge the refrigerant system and perform a leak test to verify proper operation.

56.    In other cases, the Class Vehicles' condensers are too weak to hold the pressure of the coolant, causing a leak at the neck of the condensers, where high-pressure gas enters.

57.    In defective Class Vehicles, the refrigerant hose and the condenser are too weak and too poorly designed and/or manufactured to withstand the pressure caused by the coolant.

58.    For those customers whose Class Vehicles experience the Defect and are outside of their warranty, it can cost from $200 to $2500 to return the AC system to working order. Conversely, GM could have installed line brackets when performing routine maintenance while the vehicles were within GM's new vehicle warranty period, thereby saving its customers thousands of dollars.

59.    Air conditioning systems in the Class Vehicles are designed to function for periods and mileages substantially in excess of those specified in Defendant's warranties. Customers justifiably expect to enjoy the use of an automobile air conditioning system will fail for significantly longer than the limited times and mileages identified in Defendant's warranties.

60.    Due to the fact that the parts affected by the Defect are internal, mechanical components and the failure manifests suddenly and without warning, Plaintiffs and Class members have no warning that the Defect has manifested until it causes a complete failure of the AC system.

**B.     GM's Longstanding Knowledge of the Defect**

61.     On October 6, 2014, GM sent out TSB 5331—a TSB detailing an issue with low air conditioning refrigerant level as a result of an issue with the refrigerant hose connecting the compressor to the condenser. As numerous courts have recognized, TSBs typically are issued long after a manufacturer acquires knowledge of a defect, suggesting GM learned of the Defect during pre-release testing or shortly after it placed the first Class Vehicles into the stream of commerce.[3]

62.     This issue, and TSB 5331, was highlighted in the 2014 meeting notes of the Cadillac National Service Managers Council. *See* 2014 Cadillac National Service Managers Council Meeting Notes, p. 23, attached as **Exhibit C**. The subject notes, under the subheading of "Escalade," expressly acknowledge TSB 5331, and note that there is an air conditioning leak "from [the] Compressor to condenser high side line." *Id*.

63.     GM then issued TSB PIE0340 on May 29, 2015 detailing "A/C Inoperative or Poor Performance on Recent Built Vehicles" for all models of the 2015 Cadillac Escalade, 2015 Chevrolet Silverado 1500, 2015 Chevrolet

---

[3] *See* https://www.repairprocedures.com/service-bulletin/document/2015/cadillac/escalade-esv-2wd/preliminary-information/pit5331/100302829_7527571_2_82_0_3996395.html (last visited August 18, 2017).

Suburban, 2015 Chevrolet Tahoe, 2015 GMC Sierra 1500, and 2015 GMC Yukon.

*See* **Exhibit A**.

64.　　GM is undeniably aware of these issues, not only because of the complaints made to GM and its authorized dealerships, but also because of the countless complaints made online. The complaints, some of which are included below, evidence GM's awareness of the defect and its potential danger.

65.　　A sampling of the customer complaints include:

> 2015 Tahoe – a/c condenser is cracked. Nationwide back order for part and no idea when I might get my truck back. In the meantime, the loaner they have available is a Camaro. Sounds nice, and I'm thankful to have something to drive in the interim, but with a family of 5 and a husband who is 6'9", it definitely is not practical or comfortable.[4]

> \*\*\*

> Purchased new model Chevy Tahoe 3 years ago and A/C not working. I live in the northeast and only use the AC 6 months/year. Was told the part is on back-order for at least 10 weeks – due to the number of 2015 Chevy Tahoes with this same issue that need the part. This is obviously a company wide issue that needs to be addressed since 2015 was the brand new model for the Tahoe. Was told the part will be over $2000 (on a 3 year old car!!!). Hoping my dealer goes to bat for me w/ GM and I get reimbursed for the part. But even with that I will have to wait until the summer to get the part and will have NO A/C. This is my 3rd and last GM car for sure.[5]

> \*\*\*

---

[4] *See* http://www.carcomplaints.com/Chevrolet/Tahoe/2015/AC_heater/ac_stopped_working.shtml, by "emwrlw, Wimauma, US" on June 2, 2017 (last visited August 18, 2017).

[5] *Id*. by "Mj C., St Davids, US" on March 22, 2017.

I've owned this vehicle for 4 months and it's the biggest POS I've ever purchased!! It's in the shop constantly with different things going on. I've HAD IT!! I want this car replaced!!!!!! DO NOT waste your hard earned money on this POS SUV!!!.[6]

***

I have had several issues with my 2015 Tahoe, but the AC not working is awful. I paid over $50,000 for this truck, I should not have major repairs like this one.[7]

***

I live in Texas. Coming home from a family camping trip the AC stopped working! It was miserable! Summer heat with 5 boys in the car, for four hours![8]

***

Purchased 2015 chevy Tahoe ltz new, 3 years ago. Air conditioning not working and told it needs a condenser. Part is on back order with no delivery date available due to the high number of 2015 Tahoes that are waiting for this part. Went online to see if anyone else is having this problem with the same make/model/year and the number is astonishing. This was a brand new model and first year offered from chevy so there is obviously a manufacturing issue. Car warranty is expired and was told part would be over $2000![9]

***

My AC conditions developed a pin hole leak along the seam/braze. The AC Delco condenser lasted just long enough to get me through the warranty period. I thought it was the AC to condenser line, but not the case, despite my truck not coming with the bracket that GM started adding to later models (thanks beta testers). The stealership quoted $1k to fix it…not happening. Has anyone DIY'd a condenser replacement? Does the drier need to be replaced as well? Any

---

[6] *Id*. by "Shannon E., Sour Lake, TX, USA" on May 20, 2015.

[7] *Id*. by "Becky G., Mulvane, KS, USA" on June 22, 2015.

[8] *Id*. by "Carmen V., Pearland, TX, US" on July 19, 2014.

[9] *See* http://www.carproblemzoo.com/chevrolet/tahoe/air-conditioner-problems.php, failure date of 03/22/2017 (last visited August 21, 2017).

recommendations on alternative condenser brands? Don't want to replace it with an equally inferior condenser.[10]

\*\*\*

A/C compressor popped yesterday. 2014 Sierra with only 56,000 miles on her. Truck bogged down and almost died while backing out of a parking spot. Looked under the hood and saw the wheel on the compressor was looking sketchy and noticed a white residue that somehow got sprayed around the engine compartment. Took it to the dealer and the service rep said he could pull some strings at GMC and get it replaced for $200. Said they have the part in stock, but I'm not feeling too optimistic after reading all the other complaints.[11]

\*\*\*

This is the first issue of three concerning the cooling system I have experienced. I understand GM is aware of the faulty design as this issue is widespread on this model. GM has since created a bracket to prevent the hose from failing however, no recall has been executed.[12]

\*\*\*

Dealer mentioned that this is a common problem, I am yet to see anything from the manufacturer.[13]

\*\*\*

Truck less than 2 year old and already had to replace the AC.[14]

---

[10] *See* http://www.gm-trucks.com/forums/topic/191974-ac-condenser-replacement/, by "Enthusiast" on September 17, 2016 at 03:34 PM.

[11] *See* http://www.carcomplaints.com/GMC/Sierra_1500/2014/AC_heater/AC_not_working.shtml by "jadair80, Bakersfield, US" on July 25, 2017 (last visited August 21, 2017).

[12] *Id*. by "ljrdavenp, Tullahoma, US" on March 2, 2016.

[13] *Id*. by "Edgardo C., Jacksonville, FL, USA" on September 15, 2015.

[14] *Id*. by "Ted. S., Bedford, IN, USA" on July 17, 2015.

66.     Indeed, GM has responded to complaints made on their own website, thereby demonstrating its longstanding awareness of the Defect and its effect on consumers:



67.     GM also is experienced in the design and manufacture of consumer vehicles, and likely conducts pre- and post-release testing on incoming batches of components, including the refrigerant hose and compressor for the Class Vehicles. These tests are designed to verify that the parts are free from defects and comply with GM's specifications.  As a result, GM knew or should have known that refrigerant hose and compressor used in Class Vehicles were defective and likely

to cause premature failure in the AC systems, costing Plaintiffs and Class members thousands of dollars in repairs.

68.    GM also knew or should have known about the Defect through its own internal records because of the high number of replacement parts likely ordered from GM by authorized GM dealers.  Upon information and belief, all GM service centers are required to order replacement parts, including replacements for the defective parts, directly from GM.  Furthermore, independent vehicle repair shops that service Class Vehicles also order replacement original equipment manufacturer (OEM) parts directly from GM.  Therefore, the sudden increase in orders refrigerant hoses, compressors, and line brackets used in the Class Vehicles was known to GM, and should have alerted them to the scope and severity of the Defect.

69.    The timing of the aforementioned complaints, coupled with the other means through which GM monitors vehicle performance, clearly establishes that GM had knowledge of the Defect prior to the time of sale of all of the Class Vehicles.

## CLASS ALLEGATIONS

70.    Plaintiff brings this action on their own behalf, and on behalf of a nationwide class pursuant to Federal Rule of Civil Procedure, Rule 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:**

All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

71.     In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure, Rule 23(c)(5), Plaintiff seeks to represent the following New York and Washington classes in the event that the Court declines to certify the Nationwide Class:

**New York Class**
All persons or entities in New York who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes.

**Washington Class**
All persons or entities in Washington who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes.

72.     The New York Class shall be referred to herein as the "New York Class."

73.     The Washington Class shall be referred to herein as the "Washington Class."

74.     The Nationwide Class, the New York Class, and the Washington Class shall be collectively referred to herein as the "Class."  Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to

22

this case.  Plaintiffs reserve the right to modify, change, or expand the various class

definitions set forth above based on discovery and further investigation.

75.     Certification of Plaintiffs' claims for class-wide treatment is

appropriate because Plaintiffs can prove the elements of their claims on a class-

wide basis using the same evidence as would be used to prove those elements in

individual actions alleging the same claim.

76.     <u>Numerosity</u>:  Upon information and belief, the Class is so numerous

that joinder of all members is impracticable.  Plaintiffs believe, and on that basis

allege, that hundreds of thousands of Class Vehicles have been sold and leased in

each of the States that are the subject of the Class.[15]

77.     <u>Existence and Predominance of Common Questions of Fact and Law</u>:

Common questions of law and fact exist as to all members of the Class.  These

questions predominate over the questions affecting individual Class members.

These common legal and factual questions include, but are not limited to:

    a.  Whether Defendant engaged in the conduct alleged herein;

    b.  Whether Defendant designed, manufactured, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

    c.  When Defendant learned of the Defect;

---

[15] Plaintiffs have determined that approximately 4,238,775 Class Vehicles were sold by GM between 2012 and 2016.

d.  Whether Defendant knew of the Defect, yet failed to disclose the problem and its consequences to its customers;

e.  Whether a reasonable consumer would consider the Defect or its consequences to be material

f.  Whether Defendant has failed to provide free repairs as required by its warranties;

g.  Whether Plaintiff and other Class members have been harmed by the fraud alleged herein;

h.  Whether Defendant was unjustly enriched by its deceptive practices; and

i.  Whether Plaintiffs and members of the Class are entitled to equitable relief in the form of rescission of the purchase agreement or other injunctive relief and, if so, in what amount.

78.  <u>Typicality</u>:  All of the Plaintiffs' claims are typical of the claims of the Class since Plaintiffs purchased a Class Vehicle with the Defect, as did each member of the Class.  Furthermore, Plaintiffs and all members of the Class suffered monetary and economic injuries arising out of GM's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

79.  <u>Adequacy</u>:  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

80.   Superiority:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation resulting from GM's conduct.  It would be virtually impossible for members of the Class individually to redress effectively GM"s misconduct.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Members of the Class can be readily identified and notified based on, *inter alia*, GM's vehicle identification numbers, warranty claims, registration records, and database of complaints.

81.   GM has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## <u>FIRST CAUSE OF ACTION</u>

**BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT (On Behalf of the Nationwide Class, or Alternatively, the New York Class and the Washington Class)**

82.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

83.     Plaintiffs and the Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

84.     Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

85.     The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

86.     Defendant's warranties are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

87.     Defendant breached the express warranties by:

   a. Providing a 3 year/36,000 miles New Vehicle Limited Warranty and a Service Parts Warranty with the purchase or lease of the Class

Vehicles, thereby warranting to repair or replace any part defective in
material or workmanship at no cost to the owner or lessee;

b. Selling and leasing Class Vehicles with the A/C Defect and thus were
defective in materials and/or workmanship, requiring repair or
replacement within the warranty period; and

c. Refusing and/or failing to honor the express warranties by repairing or
replacing, free of charge, the A/C Defect.

88.     Plaintiffs and the other Class members relied on the existence and
length of the express warranties in deciding whether to purchase or lease the Class
Vehicles.

89.     Defendant's breach of the express warranties has deprived Plaintiffs
and the other Class members of the benefit of their bargain.

90.     The amount in controversy of Plaintiffs' individual claims meets or
exceeds the sum or value of $25.00. In addition, the amount in controversy meets
or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed
on the basis of all claims to be determined in this suit.

91.     Defendant has been afforded a reasonable opportunity to cure its
breach of the written warranties and/or Plaintiff and the other Class members were
not required to do so because providing Defendant a reasonable opportunity to cure
its breach of written warranties would have been futile. Defendant was also on

27

notice of the Defect from the complaints and service requests it received from Class members, as well as from its own warranty claims, customer complaint data, and/or parts sales data.

92.     As a direct and proximate cause of Defendant's breach of the written warranties, Plaintiffs and the other Class members sustained damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiffs and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees, and/or other relief as deemed appropriate.

## SECOND CAUSE OF ACTION

### INJUNCTION FOR VIOLATIONS OF NY GBL § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT) (By Plaintiff Tangara on Behalf of the New York Class)

93.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

94.     Plaintiff Tangara ("Plaintiff" for purposes of this Count) brings this claim on behalf of himself and the New York Class against Defendant.

95.     New York General Business Law § 349 ("NY GBL § 349") prohibits "[d]deceptive acts or practices in the conduct of any business, trade or commerce or in furnishing of any service in this state…"  NY GBL § 349(a).

96.     Any person who has been injured by reason of any violation of NY GBL § 349 "may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff." NY GBL § 349(h).

97.     Defendant's actions, as set forth above, occurred in the conduct of business, trade or commerce.

98.     In the course of Defendant's business, it willfully failed to disclose the risk of the Defect in the Class Vehicles as described above. Moreover, Defendant misrepresented the AC systems in the Class Vehicles as functional and suited for their intended purpose, when, in fact, they were not. Accordingly, Defendant engaged in unfair and deceptive acts or practices.

99.     Defendant should have disclosed this information because it was in a superior position to know the true facts related to the Defect, and Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to this Defect.  Defendant, by the conduct, statements, and omissions described above, also knowingly and intentionally concealed from Plaintiff and the

Class members that Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem).

100.   These acts and practices have deceived Plaintiff and are likely to, and did, deceive the public.  In failing to disclose the Defect and suppressing material facts from Plaintiff and the Class members, Defendant breached its duties to disclose these facts, violated the NY GBL § 349, and caused injuries to Plaintiff and the Class members.  The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

101.   The acts and omissions of Defendant were likely to mislead a reasonable consumer into purchasing Defendant's products. Defendant's deceptive acts are material because they concern an essential feature of the Class Vehicles— the air conditioning system.

102.   The sale and distribution in New York of the Class Vehicles was a consumer-oriented act, and thereby falls under the New York deceptive acts and practices statute.

103.   Defendant has refused to act on grounds generally applicable to the injunctive relief sought by Plaintiff, thereby making final injunctive relief appropriate.

104.   Defendant persists in its deceptive and unfair marketing and sales practices regarding the Class Vehicles to the detriment of consumers across the country, including Plaintiff and the Class.

105.   At all times, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous.

106.   Defendant's actions impact the public interest because Plaintiff and members of the New York Class were injured in exactly the same way as thousands of others who purchased the Class Vehicles.

107.   If Defendant is allowed to continue with these practices, consumers, including Plaintiff and the Class, will be irreparably harmed. Plaintiff and the Class do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint unless injunctive relief is granted to stop Defendant's deceptive marketing and sale of the Class Vehicles.

108.   Thus, Plaintiff is entitled to an injunctive requiring Defendant to cease its unfair and deceptive practices relating to the sale of the Class Vehicles.

109.   Plaintiff and the Class seek declaratory relief, a judgment enjoining Defendant from continuing to disseminate its false and misleading statements and awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, as other relief as the Court deems just under NY GBL § 349.

110.   Defendant's conduct proximately caused injuries to Plaintiff and other Class members. Had Plaintiff and the Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them or would have avoided the extensive repair costs associated therewith.

## THIRD CAUSE OF ACTION

### DAMAGES FOR VIOLATIONS OF NY GBL §§ 349 AND 350
**(DECEPTIVE AND UNFAIR TRADE PRACTICES/FALSE ADVERTISING)**
**(By Plaintiff Tangara on Behalf of the New York Class)**

111.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

112.   Plaintiff Tangara ("Plaintiff for purposes of this Count") bring this cause of action on behalf of himself and on behalf of the members of the New York Class against Defendant.

113.   Plaintiff brings this claim for damages under NY GBL §§ 349 and 350.

114.   Defendant engaged in consumer-oriented commercial conduct by selling and advertising the Class Vehicles to Plaintiff and the Class.

115.   Defendant misrepresented and omitted material facts regarding the Class Vehicles, including the Defect and the resulting failure of the air conditioning systems in the Class Vehicles. Indeed, Defendant misrepresented the

32

AC systems in the Class Vehicles as functional and suited for their intended purpose, when, in fact, they were not.

116.   Defendant's misrepresentations, omissions, and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false advertising, misrepresentation, and/or the knowing concealment, suppression, or omission in connection with the sale and advertisement of the Class Vehicles, in violation of NY GBL § 349.

117.   Defendant knowingly misrepresented the Class Vehicles as fit to be used for the purpose for which they were intended, when, in fact, Defendant knew the Class Vehicles were defective, dangerous, and not what was advertised. Indeed, Defendant misrepresented the AC systems in the Class Vehicles as functional and suited for their intended purpose, when, in fact, they were not.

118.   Defendant engaged in the deceptive acts and practices alleged herein in order to sell the Class Vehicles to Plaintiff and the Class.

119.   Defendant's practices, acts, policies, and course of conduct, including its omissions and subsequent failure to inform the public about the Defect, as described above, were intended to induce, and did induce, Plaintiff to purchase one of the Class Vehicles.

120.   Defendant sold the Class Vehicles knowingly concealing the fact that they contained the Defect alleged herein.

121.   Defendant's conduct proximately caused injuries to Plaintiff and other Class members. Had Plaintiff and the Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them or would have avoided the extensive repair costs associated therewith.

122.   Thus, Plaintiff and the Class are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

<u>**FOURTH CAUSE OF ACTION**</u>

**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**
**Wash. Rev. Code § 19.86.010, *et seq.***
**(By Plaintiff Brennan on Behalf of the Washington Class)**

123.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

124.   Plaintiff Thomas Brennan ("Plaintiff" for purposes of this Count) brings this claim on behalf of himself and the Washington Class Defendant.

125.   Washington's Consumer Protection Act ("WCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Wash. Rev. Code § 19.86.020.

126.   The actions of Defendant, as set forth above, occurred in the conduct of trade or commerce.

127.   In the course of Defendant's business, they willfully failed to disclose the dangerous risk of the Defect in the Class Vehicles as described above. Defendant also actively concealed the Defect by failing to inform customers of the Defect well after it was originally known.  Accordingly, Defendant engaged in unfair and deceptive acts or practices.

128.   Defendant should have disclosed this information because it was in a superior position to know the true facts related to the Defect, and Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to this Defect.  Defendant, by the conduct, statements, and omissions described above, also knowingly and intentionally concealed from Plaintiff and the Class members that Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem).

129.   Defendant knowingly misrepresented the Class Vehicles as fit to be used for the purpose for which they were intended, when, in fact, Defendant knew the Class Vehicles were defective, dangerous, and not what was advertised. Indeed, Defendant misrepresented the AC systems in the Class Vehicles as functional and suited for their intended purpose, when, in fact, they were not.

130.   These acts and practices have deceived Plaintiff and are likely to, and did, deceive the public.  In failing to disclose the Defect and suppressing material facts from Plaintiff and the Class members, Defendant breached its duties to

disclose these facts, violated the WCPA, and caused injuries to Plaintiff and the Class members.  The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

131.   The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class members should have reasonably avoided.

132.   Defendant's conduct proximately caused injuries to Plaintiff and other Class members.  Had Plaintiff and the Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them or would have avoided the extensive repair costs associated therewith.

133.   Pursuant to Washington Revised Code section 19.86.090, Plaintiff requests that the Court grant treble damages

## FIFTH CAUSE OF ACTION

### FRAUD
**(On Behalf of the Nationwide Class or, Alternatively, the New York Class and the Washington Class)**

134.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

135.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against Defendant.

136.    Defendant's misrepresentations, nondisclosures, and/or concealment of material facts to Plaintiffs and the members of the Class, as set forth above, were known, or through reasonable care should have been known, by Defendant to be false and material and were intended to mislead Plaintiffs and the members of the Class.

137.    Plaintiffs and the Class were actually misled and deceived and were induced by Defendant to purchase the Class Vehicles which they would not otherwise have purchased, or have paid substantially less for.

138.    As a result of Defendant's conduct, Plaintiffs and the Class members have been damaged

## SIXTH CAUSE OF ACTION

### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class or, Alternatively, the New York Class and the Washington Class)**

139.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

140.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against Defendant.

141.   Plaintiffs and members of the Class conferred a benefit on Defendant by purchasing or leasing the Class Vehicles.

142.   Defendant had knowledge that this benefit was conferred upon them.

143.   Defendant has been unjustly enriched at the expense of Plaintiffs, and its retention of this benefit under the circumstances would be inequitable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B. appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a

reasonable period of time, or, at a minimum, to provide Plaintiffs and

Class members with appropriate curative notice regarding the existence

and cause of the Defect;

F.  award reasonable attorneys' fees and costs; and

G.  grant such further relief that this Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated:  August 23, 2017               Respectfully submitted,
                                      CAFFERTY CLOBES MERIWETHER &
                                      SPRENGEL LLP


                            By:   /s/ Patrick E. Cafferty

                                  Patrick E. Cafferty
                                  **CAFFERTY CLOBES MERIWETHER
                                  & SPRENGEL LLP**
                                  220 Collingwood Dr., Suite 130
                                  Ann Arbor, Michigan 48103
                                  Telephone:  (734) 769-2144
                                  Facsimile:  (215) 864-2810
                                  E-Mail:  pcafferty@caffertyclobes.com
                                  Michigan Bar No. 35613

                                  Bryan Clobes
                                  **CAFFERTY CLOBES MERIWETHER
                                  & SPRENGEL LLP**
                                  1101 Market St., Suite 2650
                                  Philadelphia, Pennsylvania 19107
                                  Telephone:  (215) 864-2800
                                  Facsimile:  (215) 864-2810
                                  E-Mail:  bclobes@caffertyclobes.com

Daniel O. Herrera
Christopher P.T. Tourek
**CAFFERTY CLOBES MERIWETHER
    & SPRENGEL LLP**
150 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
Phone: (312) 782-4880
Facsimile: (312) 782-4485
E-Mail: dherrera@caffertyclobes.com
        ctourek@caffertyclobes.com

***Counsel for Plaintiffs and the Putative Class***